**LEX TECNICA, LTD.**
MICHAEL D. FALATER, ESQ.
Utah Bar No. 19620
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413
mike@lextecnica.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| THE PRESERVE, a Utah Landowners' Association;<br>                    Plaintiff,<br><br>vs.<br><br>KAMAS CITY, a Utah municipal corporation; KAMAS VALLEY PRESERVATION ASSOCIATION, an association; MATT MCCORMICK, an individual; JERAMY BRISTOL, an individual; LINDY STERNLIGHT, an individual; CRAIG SAVAGE, an individual; and DOES I-X, inclusive,<br>                    Defendants. | Case No:<br><br><br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

**I. INTRODUCTION**

Plaintiff brings this action to expose the illegal conspiracy and racketeering of Defendants to stop the lawful incorporation of the proposed town of West Hills, Utah – at any cost. Private individuals and government officers colluded to engage in unlawful government action under the false pretense of the Kamas Valley Protection Association ("KVPA"). To wit, Lindy Sternlight ("Sternlight") and Jeramy Bristol ("Bristol") and wealthy outsider, developer and supporter Craig Savage ("Savage") conspired to subvert the democratic processes for their own political and economic interests, and persuaded Kamas City ("Kamas"), and its mayor Matt McCormick ("McCormick"), to violate Utah's Official Misconduct law, Utah Code § 76-8-201 and other legal standards by effectively deputizing the KVPA to do its dirty work.

1

Through backchannel communications, targeted pressure campaigns, and the misuse of government resources and authority, these co-conspirators deceived the public, misused public resources, exploited official platforms and spaces, and built an illegal coalition to manipulate public perception and depress property values, to enrich themselves.

To do this, they needed to pause, if not derail, the Incorporation of West Hills (the "Incorporation"), at all costs. Why? Because a new town would increase property values with more neighbors and growth; growth KVPA independently wealthy leaders Savage and Sternlight want to profit from themselves, and which McCormick and Kamas incorrectly fear would dilute their local power, authority and control.

Recognizing their outsider status, the KVPA and its leaders Sternlight and Savage recruited the support of the only local resident, and community leader, Bristol, and others, to lobby the surrounding towns. Claiming to be a "non-profit" to raise funds, but lacking that standing with the IRS, the KVPA, then through collusion with McCormick, took control of the official policy of Kamas. They also lobbied members of other local governments, including the cities of Francis and Oakley, as well as Summit County and the South Summit County School District, to improperly support or endorse the KVPA–conduct that violated Utah's Official Misconduct law, Utah Code § 76-8-201 and other legal standards. That conduct includes unlawful political advocacy using public resources and participation in a hidden campaign to suppress and subvert the lawful democratic process.

Plaintiff owns 266 acres within the proposed boundaries of West Hills and supported the Incorporation only after repeated and unjustified refusals by surrounding municipalities and Summit County to permit even a single home. Defendants aim to amplify this "no new homes" policy – until they can take full control of the land. Plaintiff now seeks redress for the economic and constitutional injuries caused by the actions of these private individuals, their sham "non-

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

2

profit" organization, and the captured town of Kamas.

The Incorporation is now a formally recognized ballot proposition pursuant to Utah Code § 10-2a-2 et seq. Given Utah's popularity, exponential growth, and national appeal, the incorporation of a town in Utah is both lawful and common, with several incorporations proposed annually.  The current process was unanimously supported by the Utah Legislature.

Once certified by the Lieutenant Governor's Office, voters are empowered to decide whether West Hills will become a new town. This democratic – "voice of the people" – process is a core feature of local self-governance. Defendants want to threaten that process. But elections must not be undermined by personal or political interests, interfered with by government, held hostage by privately funded advocacy groups acting outside the law, or corrupted by external actors with no genuine stake in the community who seek to influence the outcome for personal or economic gain.

Nevertheless, Defendants have coordinated and conspired to take the law into their own hands – Utah law be damned. Accordingly, this Complaint focuses on the main architects of the obstruction: the KVPA and its leadership, Lindy Sternlight, Craig Savage, and Jeramy Bristol, assisted by Mayor McCormick and the City of Kamas. However, Plaintiff's reserve the right to bring claims against the cities of Oakley Francis, as well as Summit County, and the South Summit County School District.

One of the clearest demonstrations of this illegal conspiracy occurred in April 2025, when Kamas City Council adopted a formal resolution opposing the West Hills Incorporation and endorsing the actions and goals of the KVPA. Unbeknownst to the public, the resolution was not drafted by city officials, but by the KVPA, with input from Mayor McCormick, and submitted to the Kamas City Council for adoption. During that same meeting, Sternlight and Bristol appeared in person to advocate against the Incorporation, stating they would do "whatever it takes" to

LEX TECNICA LTD®
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

3

prevent growth in Summit County.

Plaintiff seeks to protect Utah from this type of misconduct and respectfully requests that the Court immediately enjoin Defendants ongoing unlawful conduct.

Given Defendants' brazenly open, direct, and indirect violations of Federal and Utah law, IRS Code, collusion, conspiracy, and tortious conduct, Plaintiff now brings forth this Complaint against Defendants for the following claims for relief:

(1) Violation of the Racketeer Influenced and Corrupt Organizations Act, per 18 U.S.C. § 1962 (c);
(2) Conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act – 18 U.S.C.§ 1962(d);
(3) Civil Conspiracy;
(4) Utah Pattern of Unlawful Activity Act – Utah Code § 76-10-16;
(5) Tortious Interference with Prospective Economic Relations.
(6) Deprivation of Due Process – Article I, Section 7, Utah Constitution

Plaintiff pleads with the Court to ensure such conduct is promptly and publicly reprimanded and corrected to uphold the integrity and sanctity of democratic processes as well as Federal and State Law.

## II. PARTIES

1.    Plaintiff THE PRESERVE is a Utah LLC, organized within the State of Utah, and owns land located within the area proposed for incorporation as the Town of West Hills, Utah.

2.    Defendant STERNLIGHT is an individual and leader of the KVPA, believed to be a resident of Summit County, Utah.

3.    Defendant SAVAGE is a private individual, founder and/or supporter of the KVPA, upon information and belief is domiciled in Wasatch County, Utah.

4.    Defendant BRISTOL is a private individual, founder and/or leader of the KVPA, believed to be a resident of Summit County, Utah.

5.    Defendant MATT MCCORMICK is the Mayor of the City of Kamas and a resident of Summit County, Utah.

4

6.      Defendant City of Kamas is a municipal corporation in the State of Utah.

7.      Defendant KAMAS VALLEY PRESERVATION ASSOCIATION (the "KVPA") is an entity recently organized in the State of Utah.

### III. JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the Complaint asserts claims arising under federal law, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and related federal statutes.

9.      The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), as those claims arise from a common nucleus of operative facts and form part of the same case or controversy as the federal claims.

10.      Venue is proper in the District of Utah under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within Summit County, Utah.

11.      Plaintiff provided the City of Kamas and Mayor McCormick with prelitigation notice under Utah Code § 63G-7-401 on May 29, 2025, in compliance with Utah's Governmental Immunity Act.

12.      To the extent that Summit County is implicated, Plaintiff provided prelitigation notice under Utah Code § 63G-7-401 on May 29, 2025, in compliance with Utah's Governmental Immunity Act.

13.      However, the central claims in this case are directed at the City of Kamas, Matt McCormick, the KVPA, Lindy Sternlight, Craig Savage, and Jeramy Bristol, whose actions and coordination, while involving public forums and officials, were conceived and executed privately, in circumvention of lawful and democratic processes.

LEX TECNICA LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

. . .

## IV. FACTUAL ALLEGATIONS

14.     Plaintiff owns land in and is a supporter of the effort to incorporate a new town called West Hills, Utah, pursuant to Utah statutory procedures and the unanimous approval of such process by the Utah Legislature.

15.     The Incorporation of West Hills is formally recognized as a ballot initiative proposition under Utah law to be voted on in November 2025.

16.     Since at least 2024, Defendants, acting in concert and with intent to subvert legal and democratic processes, launched a campaign to oppose the lawful Incorporation of West Hills.

17.     Defendants' unlawful campaign against the Incorporation includes the following insidious and improper activities:

18.     A formal resolution opposing the Incorporation, drafted by the KVPA and Mayor McCormick and delivered to City of Kamas officials, was adopted even after concerns were raised by Kamas City Council members about potential legal exposure.

19.     Councilmembers acknowledged they had been warned by legal counsel that such conduct could be unlawful and would likely cause a lawsuit;

20.     But Defendant's collusive efforts overcame those objections.

21.     As discovered through public records requests, the pressure campaign devised by Defendants began as early as June 2024, if not earlier.

22.     Sternlight began exchanging text messages with various public officials, including Kamas Mayor McCormick and Francis Mayor Forman, insisting "we have to unite or lawyers from SLC will chew us up."

23.     Mayor Forman responded, "Yep."

24.     Upon information and belief, these meetings occurred regularly, including at an

6

Education Agricultural Planning Meeting, following coordination by text and email to organize opposition to the Incorporation.

25.    Following these communications, the parties began coordinating formal city meetings designed to use public spaces, titles and resources to generate public opposition to Incorporation in violation of Utah's Official Misconduct law, Utah Code § 76-8-201 and other legal standards.

26.    In or around November 2024, the mayors of Kamas, Francis, and Oakley, along with South Summit School District (SSSD) Superintendent Greg Maughan, exchanged emails concerning a draft letter opposing Incorporation; a letter drafted by the KVPA.

27.    On November 21, 2024, Bristol sent a letter to Oakley Mayor Woolstenhulme inviting him to "edit, add, or subtract whatever you feel is appropriate and return." Mayor Woolstenhulme responded that he was in contact with Greg Maughan, Superintendent for SSSD, who was also concerned about the Incorporation.

28.    In January 2025, Sternlight asked Mayor Forman whether the Incorporation proponents had sought annexation into Francis. Mayor Forman replied that West Hills had sought annexation, and that he, Francis told them "hell no."

29.    On or around early March 2025, a Kamas City Council meeting was attended by Craig Savage.

30.    Mr. Savage is a wealthy individual and property owner living in another county, whose luxury Tuhaye golf course property (outside the Incorporation area) overlooks West Hills.

31.    At this meeting, Savage stood and publicly declared to the audience that he would do "whatever it takes" to oppose the Incorporation.

32.    In April 2025, Sternlight noted internally that "Tuhaye owners are joining our side

with $ for lawyers" presumably referring to Savage.

33.     Tuhaye (aka Talisker Club) is a luxury golf community with no direct connection to West Hills. Rather, it is owned and operated by the interstate luxury community developer Storied Development, further illustrating the outside influence shaping the falsely claimed "local" opposition.

34.     Shortly after Sternlight's April 2025 statement about "Tuhaye owners", Defendants Bristol, Sternlight, and Savage, along with apparent coordination from Summit County, Kamas, Oakley, and Francis officials, formed the KVPA, a sham "non-profit" entity not recognized by the IRS. KVPA was created for the express purpose of opposing and initiating litigation against the Incorporation. In doing so, the group violated provisions of the Utah Revised Nonprofit Corporation Act and federal restrictions on the political activity of § 501(c)(3) organizations.

35.     On or about April 6, 2025, Sternlight, a leader of the KVPA, sent an email to Mayor McCormick in his official capacity as Mayor of Kamas, including a draft resolution opposing the incorporation and a request that the KVPA website be linked to the Kamas City official website.

36.     On April 8, 2025, Mayor McCormick, acting in his official capacity then began to conspire with the KVPA and its members, and agreed via email to present the anti-Incorporation resolution to the Kamas City Council.

37.     In that email, he acknowledged having sought legal advice about the resolution and encouraged the KVPA to attend the council meeting to voice support, thereby waiving any potential privilege as to legal concerns about the measure.

38.     On April 17, 2025, Sternlight sent an email to Mayor McCormick, in his official capacity, requesting that the finalized resolution be presented at the upcoming Kamas City

LEX TECNICA LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

8

Council meeting.  Mayor McCormick responded by sending the finalized document and confirming its public posting.

39.    On April 22, 2025, during the Kamas City Council meeting, officials openly discussed using city resources and platforms to influence the Incorporation vote. They acknowledged potential legal exposure and concerns about being sued but ultimately voted to formally oppose Incorporation and endorse the KVPA. As recorded in the minutes, Councilor Leslie Staples moved to amend the resolution to include: "The Kamas City Council endorses and supports the efforts of the Kamas Valley Preservation Association" including its unlawful legal claims.

40.    On April 22, 2025, the Kamas City Council formally adopted a resolution declaring the Council's, and thereby the City's, official opposition to the Incorporation of West Hills.

41.    As of the date of this filing, the official meeting minutes for the Kamas City Council meeting on April 22, 2025, have been removed from the Kamas City website and the public shared drive where meeting minutes are stored, though the minutes of meetings before and after April 22, 2025, are readily available.

42.    On April 30, 2025, Defendant Bristol, identified as a KVPA founder, contacted Oakley officials to request a meeting about KVPA's opposition to the Incorporation. The parties agreed to meet at Oakley City Hall on May 1, 2025.

43.    This outreach reflects the continued pressure and influence exerted by the KVPA leadership on local government officials and entities even after the Kamas City Council adopted its anti-incorporation resolution.

44.    On May 1, 2025, Oakley Mayor Zane Woolstenhulme ("Woolstenhulme") and Oakley Recorder Amy Rydalch, in their official capacities, met Bristol and Sternlight to discuss

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

9

resolution strategy and potential council action.

45.    On May 2, 2025, Bristol emailed Oakley officials attaching draft resolution language and KVPA's articles of incorporation, urging the matter be placed on a council agenda for adoption.

46.    On May 2, 2025, Bristol sent a copy of the articles of organization of the KVPA to Jeremie Forman, Mayor of Francis, seeking his approval. Bristol specifically asked Mayor Forman to "please go through these with your attorney and comment on any concerns you may have."

47.    Bristol also sent an email to Woolstenhulme and Andy Rydalch, sharing the KVPA articles and a draft of the illegal resolution, saying, "Please go through these with your attorney and staff. Please comment on any concerns you may have….We sincerely hope to become a positive resource for you and the city to work with going forward."

48.    Bristol followed up with additional emails on May 7 and May 23, seeking comment and further coordination from Oakley officials.

49.    While Oakley officials praised KVPA's efforts as "commendable," they declined to adopt the resolution. On May 20, 2025, Oakley formally refused, stating that "it would not be in Oakley City's best interest to get into the business of formally endorsing community action groups."

50.    These communications illustrate Defendants' systematic conspiracy to recruit, obtain funding from, and solicit multiple governmental entities to take unlawful positions against the Incorporation.

51.    Thereafter, the Cities of Kamas, Oakley, and Francis, as well as the South Summit School District, jointly sent a letter to Utah Lieutenant Governor Henderson expressing their opposition to the incorporation of West Hills, joining in the collusion and unlawful concerted

efforts of the KVPA.

## **FIRST CLAIM FOR RELIEF**

*(Violation of the Racketeer Influenced and Corrupt Organizations Act – 18 U.S.C. § 1962 (c) – Defendants McCormick, Sternlight, Bristol, Savage, and KVPA)*

52.    18 U.S.C. § 1962(c) makes it unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

53.    Defendants and others known and unknown formed an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4), consisting of McCormick, the KVPA, its founders Bristol, Sternlight, and Savage, and other individuals acting in coordinated opposition to the lawful Incorporation of West Hills.

54.    The Enterprise had a shared purpose: to obstruct the Incorporation and protect the political and economic interests of its members. It operated as a continuing unit, engaging in coordinated communications, strategic planning, and joint execution of public-facing and behind-the-scenes opposition efforts.

55.    The activities of the Enterprise affected interstate commerce by interfering with real estate development, impacting property values and investment in Summit County, deterring potential relocations to the region, and utilizing interstate wire communications (emails, text messages, and internet-based transmissions) to advance and conceal the scheme.

56.    Defendants conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), consisting of multiple acts of wire fraud, including use of public and private funds, in violation of 18 U.S.C. § 1343.

57.    Defendants also engaged in honest services fraud, as defined in 18 U.S.C. § 1346, by devising and executing a scheme to deprive the public of its intangible right to honest

LEX TECNICA LTD.
10161 Park Run Drive, Sute 150
Las Vegas, Nevada 89145
(725) 239-8413

11

government services. This included covertly directing and influencing public officials using a sham nonprofit organization to mask political objectives and illegally influence the outcome of a certified ballot initiative.

58.    Evidence of Defendants' Intent to Conceal and Coordinate Political Activity, includes on April 22, 2025, during a publicly recorded city council meeting, members of the City Council made statements reflecting concern about potential legal exposure and discussed strategies to distance themselves from the anti-Incorporation campaign. Statements included:

-    "More lawsuit proof… I think that's kind of what this resolution needs to be."

-    "If it can't be directed back to us but can be directed to support this group (KVPA), that would be preferable."

59.    These comments show an awareness of legal boundaries and reflect the deliberate concealment of KVPA's role in directing public action, hallmarks of fraudulent intent under RICO.

60.    Other statements made during the same meeting, including a city official's inquiry into whether KVPA was "getting voter rolls from the clerk" and whether there was "anything we can help you with," further illustrate the blurring of public duties and private advocacy prompted by KVPA's influence.

61.    In furtherance of the scheme, Defendants transmitted, or caused to be transmitted, multiple wire communications in interstate commerce, including:

62.    On or about April 6, 2025, Sternlight, acting in her capacity as a leader of KVPA, emailed Mayor McCormick, attaching a draft city resolution opposing the Incorporation of West Hills.

63.    The email presented the resolution as a legitimate governmental measure reflecting local consensus. However, it was drafted entirely by KVPA, an unregistered private

LEX TECNICA LTD™
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

12

advocacy group with undisclosed economic and political interests.

64.    This misrepresentation was material and intended to induce Mayor McCormick to formally introduce the resolution under the color of official authority.

65.    The communication, transmitted via email across state lines, constitutes wire fraud under 18 U.S.C. § 1343.

66.    On or about April 17, 2025, Sternlight again emailed Mayor McCormick to request formal presentation of the finalized resolution at the upcoming City Council meeting.

67.    Here, she reaffirmed the KVPA's intent to have the resolution adopted without public acknowledgment of its true origin.

68.    The message was designed to give the false impression that the resolution emerged from public or neutral governmental deliberation, rather than from a small, partisan group with self-interested motives.

69.    This materially misleading representation furthered the scheme to improperly influence a governmental act in service of private opposition to Incorporation, and was sent by electronic mail, constituting another predicate act of wire fraud.

70.    On or about April 22, 2025, less than an hour before the Kamas City Council meeting, Mayor McCormick emailed the final version of the anti-Incorporation resolution to Sternlight.

71.    The communications between the KVPA and Mayor McCormick concealed the private political origins of the measure, which was about to be voted on in a public session as if it originated from the City Council.

72.    The concealment of authorship and underlying political motives constituted an intentional deception, transmitted via email to mislead both the public and city council members, constituting yet another overt act of wire fraud.

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

LEX TECNICA LTD.

10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

73.    On or about April 24, 2025, the KVPA and its affiliated individuals engaged in coordinated outreach to media outlets.

74.    They sent anti-Incorporation messaging that falsely implied institutional and grassroots support for the opposition effort.

75.    These messages omitted the fact that opposition was being coordinated and directed by a small group of private landowners and their affiliates, operating through the KVPA.

76.    The purpose of these communications was to shape public perception and apply illegitimate pressure on voters and officials, by cloaking partisan opposition in the appearance of neutral, community-based concern.

77.    These misleading statements, made through electronic communication and targeting an interstate audience, constitute further acts of wire fraud in furtherance of the racketeering scheme.

78.    Between May 1 and May 23, 2025, Bristol, acting as a founder and agent of the KVPA, sent a series of emails to Oakley officials, attaching draft resolutions and organizational materials.

79.    These messages clearly invited Oakley officials to adopt the KVPA-drafted language opposing Incorporation, without disclosing the KVPA's private motives, authorship, or funding sources.

80.    Bristol further invited edits to the resolution "with your attorney," falsely implying that the proposal originated from legitimate governmental concern.

81.    These emails were sent for the purpose of influencing public officials under false pretenses and concealing private advocacy as neutral policy discourse constitute predicate acts of wire fraud and honest services fraud under 18 U.S.C. §§ 1343 and 1346.

82.    Throughout April and May 2025, KVPA leadership, including Bristol and

14

Sternlight, sent multiple emails to municipal officials in Kamas, Oakley, and Francis attaching KVPA's articles of organization and requesting government adoption of language drafted by the KVPA.

83.    These communications made no disclosure of the KVPA's lack of IRS recognition, its private funding sources, or the self-interested motives of its leaders.

84.    By presenting themselves as a neutral community preservation group rather than a partisan entity opposing development, Defendants intentionally misled public officials into considering governmental action based on fraudulent representations.

85.    These communications further constitute acts of wire fraud and honest services fraud.

86.    This conduct constituted a scheme to deprive the public of honest services, as defined by 18 U.S.C. § 1346, by concealing the political origins of official actions and redirecting partisan strategy through a privately controlled front group.

87.    Taken together, these predicate acts reflect a coordinated and continuous scheme directed by the KVPA and its leaders, materially assisted by McCormick, to defraud the public, co-opt public officials, and obstruct a certified democratic process.

88.    These acts constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5) and were committed using interstate wire communications in furtherance of the enterprise's unlawful objectives.

### SECOND CLAIM FOR RELIEF

*(Conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act – 18 U.S.C.§ 1962(d) - Defendants KVPA, Sternlight, Bristol, and Savage)*

89.    Plaintiff incorporates by reference the preceding paragraphs.

90.    Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity.

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

LEX TECNICA
LTD·
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

91.    Defendants knowingly agreed and conspired to conduct and participate in the affairs of an unlawful enterprise through a pattern of racketeering activity, as detailed in the First Claim for Relief.

92.    The conspiracy centered around the formation and use of the KVPA as a false front to conceal and coordinate political opposition to the lawful Incorporation of West Hills.

93.    The KVPA served as the public-facing instrument through which Defendants advanced a shared objective: to obstruct a certified ballot initiative while concealing the source, structure, and funding of the campaign.

94.    In furtherance of this agreement, Defendants committed numerous predicate acts, including wire fraud in violation of 18 U.S.C. § 1343 and honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346.

95.    Among the overt acts committed in furtherance of the conspiracy were several coordinated efforts such as the exchange of emails and text messages containing draft resolutions, political talking points, and press strategy.

96.    Defendants also sent targeted communications to municipal officials urging formal adoption of anti-Incorporation language authored by the KVPA.

97.    These communications deliberately concealed their true origin in order to create the false impression of broad, grassroots public opposition to the Incorporation.

98.    On information and belief, Defendants also coordinated legal and fundraising strategies through KVPA in order to finance litigation and sustain public pressure, further evidencing the structured and ongoing nature of the conspiracy.

99.    While public officials were approached, influenced, and at times enlisted into this effort, the conspiracy itself was conceived, directed, and executed by the private Defendants named in this claim.

100.    The involvement of public actors does not alter the fact that the unlawful enterprise was organized and driven by Bristol, Sternlight, Savage, and their front organization.

101.    As a direct and proximate result of this conspiracy, Plaintiff has suffered significant harm, including economic losses tied to the obstruction of a lawful development and Incorporation process, reputational damage, and considerable legal and administrative costs required to respond to Defendants' coordinated campaign.

102.    Pursuant to 18 U.S.C. § 1964, Plaintiff seeks all available remedies, including treble damages, reasonable attorneys' fees and costs, and such declaratory or injunctive relief as the Court deems just and appropriate.

## THIRD CLAIM FOR RELIEF

*(Civil Conspiracy – Defendants McCormick, Sternlight, Bristol, Savage, and KVPA)*

103.    Plaintiff incorporates by reference the preceding paragraphs.

104.    Under Utah law, civil conspiracy arises when there is (1) a combination of at least two people, (2) an objective, (3) an agreement, (4) an unlawful and overt act, and (5) resulting damage. See *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29.

105.    Defendants conspired to obstruct the lawful Incorporation of West Hills through improper and unlawful means.

106.    Acting in concert, these Defendants agreed to use the KVPA as a political vehicle to influence public officials, distribute misleading information, and mobilize opposition to the Incorporation.

107.    The KVPA was structured to appear as a neutral nonprofit organization, while concealing its partisan mission and private political objectives.

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

17

108.    As part of this strategy, Defendants transmitted draft anti-Incorporation resolutions to local officials, solicited edits and approvals, and coordinated messaging campaigns intended to create the false impression of broad community opposition.

109.    In furtherance of this agreement, Defendants engaged in multiple overt acts, including direct communications with municipal officials, delivery of draft resolutions, participation in closed-door planning meetings, and the public dissemination of coordinated narratives through media and public comment.

110.    Defendants also organized attendees to public gatherings from outside the affected area to give the appearance of grassroots opposition, despite those individuals having no stake in the Incorporation.

111.    The conspiracy escalated to include efforts to manipulate voter eligibility by placing recreational vehicles within the proposed West Hills boundaries as fraudulent "residences" for anti-Incorporation participants.

112.    Defendants' actions constitute a civil conspiracy under Utah law.

113.    On April 19, 2025, KVPA leadership confirmed that Tuhaye property owners were "joining our side with $ for lawyers," demonstrating a financial commitment and mutual strategy between private actors and public officials to obstruct incorporation through political and legal means.

114.    This further supports the existence of an agreement and coordinated plan among Defendants and their associates.

115.    Defendants' intent to conspire against the Incorporation is further evidenced by the coopting and inclusion into the conspiracy of local government officials, as reflected in statements made during the April 22, 2025, City Council meeting.

LEX TECNICA
LTD·
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

18

116.    The meeting transcript reveals city officials who had clearly absorbed the KVPA's messaging and appeared eager to align themselves with its objectives, even with full knowledge of the legal and ethical implications.

117.    At that meeting one elected official remarked: "Is there 36 voters in this room right now that are going to be voting 'No'… I want this resolution to incent people to vote, we got your back, we agree with what you're intending to do…" Another inquired whether KVPA was "getting voter rolls from the clerk" and asked what else they could "help with," demonstrating Defendants' conspiratorial activities.

118.    At one point, city officials even advised KVPA to "go door to door… reach out to the voters directly," further reinforcing the role that Kamas had assumed by joining and supporting the private campaign that the KVPA was orchestrating, and lending the weight of official governmental blessing to the illegal enterprise.

119.    Later, in a public social media post, Sternlight wrote: "In meeting with Kamas Valley leaders – it is a united front in stopping the commercial sprawl and 1000s of apartments." This statement further demonstrates Defendants' strategy of portraying political alignment between the KVPA and local government to legitimize KVPA unlawful objectives and present a privately coordinated campaign as if it reflected governmental consensus.

120.    These events illustrate how Defendants shaped the public narrative, masked their private political agenda behind a façade of civic concern, and positioned themselves as the architects of a coordinated opposition effort all while allowing public actors to serve as the visible front.

121.    On April 30, 2025, Bristol contacted Oakley officials to further the KVPA's opposition to the West Hills Incorporation.

LEX TECNICA
LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

122.    This outreach resulted in a meeting at Oakley City Hall on May 1, 2025, during which KVPA leaders presented draft resolution language and sought formal support. Bristol followed up with emails proposing edits, reiterating the KVPA's goals while urging alignment with the group's anti-Incorporation position.

123.    While this outreach reflects the continued and aggressive nature of Defendants' conspiracy, Oakley ultimately declined to participate, citing concern about the propriety of endorsing a private advocacy group. Oakley's refusal underscores the shocking nature of McCormick's decision to join the conspiracy despite well-known legal risks.

124.    As a result of this conspiracy, Plaintiff has suffered damages including lost political support, reputational harm, delayed or obstructed incorporation proceedings, and diminished property and economic value exceeding millions in damages.

## FOURTH CLAIM FOR RELIEF

*(Utah Pattern of Unlawful Activity Act – Utah Code § 76-10-1602 – Defendants McCormick, Sternlight, Bristol, Savage, and KVPA)*

125.    Plaintiff incorporates by reference the preceding paragraphs.

126.    The KVPA, an unregistered and non-compliant entity, along with its primary organizers Bristol, Sternlight, and Savage and co-conspirator McCormick, formed an association-in-fact enterprise with the unlawful purpose of obstructing the lawful incorporation of West Hills. This enterprise engaged in a sustained scheme to manipulate public perception, co-opt local government entities, and interfere with Plaintiff's economic and constitutional interests through materially deceptive communications.

127.    Between at least April and May 2025, the enterprise engaged in a series of intentional, knowing, and materially misleading communications in violation of Utah Communications Fraud statute found in Utah Code § 76-10-1801. The following constitute distinct acts of communications fraud:

128.     On April 6, 2025, Sternlight emailed a draft resolution opposing the Incorporation to Mayor McCormick, falsely implying it was a product of public, not private, deliberation. She requested that this privately authored resolution be introduced by the Kamas City Council under the color of municipal authority.

129.     On April 8, 2025, Sternlight followed up via email, again in her capacity as a KVPA leader, to confirm that Mayor McCormick would introduce the resolution.

130.     Her communications concealed the political and personal motivations of KVPA as they sought to disguise its private advocacy through the formal actions of a public body.

131.     On April 17, 2025, Sternlight emailed again to request that the finalized version of the resolution be formally presented at the April 22 Kamas City Council meeting.

132.     This further concealed the KVPA's ongoing involvement and promoted the false impression that the resolution originated from a neutral governmental process.

133.     On April 22, 2025, less than an hour before the vote, Mayor McCormick emailed Sternlight the finalized resolution.

134.     The resolution was then passed by the Kamas City Council with no public disclosure that it had been drafted by a private political group.

135.     KVPA's control over the resolution's language and timing was concealed from the public.

136.     Between May 1 and May 23, 2025, Bristol sent a series of emails to Oakley officials. These emails included a draft resolution language authored by the KVPA.

137.     Bristol invited Oakley officials to "edit, add, or remove" language and requested they adopt the anti-Incorporation resolution without disclosing the KVPA's authorship or political motives.

LEX TECNICA LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

138.    These communications sought to induce formal governmental endorsement through false pretenses.

139.    In additional email correspondence with Oakley and Francis officials, Bristol asked that the materials be reviewed "with your attorney," reinforcing the impression that the resolution was a legitimate, municipally sponsored document when in fact, it originated entirely from a privately motivated group with undisclosed economic and political interests.

140.    On or around April 30, 2025, Bristol contacted Oakley officials by phone to request an in-person meeting regarding the KVPA's anti-Incorporation campaign.

141.    That meeting took place on May 1 at Oakley City Hall. There KVPA leaders presented materials that mischaracterized the Incorporation.

142.    Oakley ultimately declined to adopt the resolution, signaling recognition that the effort was privately driven and legally suspect.

143.    Each of these acts constitutes a separate instance of communications fraud under Utah Code § 76-10-1801.

144.    The pretenses, representations, and material omissions involved were made knowingly and with the intent to deceive public bodies and the public into believing the anti-Incorporation effort was independently generated by neutral government entities.

145.    The value sought by the Defendants through this fraudulent campaign was substantial, including the preservation of private economic interests in nearby developments, influence over land-use policy, and suppression of lawful development rights. All of which qualify as "things of value' under the statute.

146.    In the aggregate, the value of the benefits sought or obtained exceeds $5,000, making the offense a second-degree felony under Utah law.

LEX TECNICA
LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

147.    Taken together, these acts form a pattern of unlawful activity under Utah Code § 76-10-1602.

148.    The pattern includes common participants, a shared objective, repeated use of materially deceptive communications, and ongoing coordination over a defined period.

149.    As a direct and proximate result of these unlawful actions, Plaintiff has suffered significant economic harm, reputational damage, and substantial legal and administrative expenses.

150.    Plaintiff is entitled to treble damages, attorneys' fees, and appropriate declaratory and prompt injunctive relief under the Utah Pattern of Unlawful Activity Act.

## FIFTH CLAIM FOR RELIEF

*(Tortious Interference with Prospective Economic Relations – Defendants McCormick, Sternlight, Bristol, Savage, and KVPA)*

151.    Plaintiff incorporates by reference the preceding paragraphs.

152.    Plaintiff had a reasonable expectation of economic benefit through the lawful incorporation of West Hills, Utah, and the corresponding ability to develop its property within the new municipality.

153.    This expectation was grounded in compliance with Utah Code § 10-2a-2 et seq. and reinforced by the Lt. Governor's formal certification of the Incorporation as a lawful ballot proposition.

154.    Defendants, in furtherance of their private political and economic interests, intentionally and improperly interfered with Plaintiff's prospective economic relations.

155.    Defendants' coordinated campaign was designed to obstruct the Incorporation process by unlawful and deceptive means, including the misrepresentation of the KVPA as a neutral nonprofit organization, concealment of its partisan motives, and use of public platforms to lend legitimacy to what was in fact a private opposition effort.

23

156.    Defendants knowingly transmitted anti-Incorporation materials to public officials under the false pretense that such materials reflected widespread grassroots opposition.

157.    In truth, the messaging originated from a small group of aligned private actors operating through KVPA, whose interests were not disclosed to the public or to the officials they targeted.

158.    As part of this scheme, Defendants orchestrated the introduction and passage of a formal resolution in Kamas City opposing Incorporation, which was adopted without disclosing its true origin.

159.    Similar efforts were directed toward Oakley and Francis City, where KVPA leadership pushed for official endorsement of its resolution through emails and meetings, while failing to disclose the economic and personal interests at stake.

160.    These actions were undertaken to suppress lawful development, derail the Incorporation process, and mislead public entities into aiding their effort.

161.    Under Utah law, improper means includes conduct contrary to statute, regulation, or established legal norms. Defendants' actions clearly violated Utah Code § 76-10-1801 (communications fraud), and Utah Code §§ 20A-11-1203 and 1206 (prohibition on use of public resources for political purposes), among other authorities.

162.    These violations satisfy the "improper means" requirement under Utah tort law.

163.    As a direct and proximate result of Defendants' interference, Plaintiff suffered loss of anticipated property value, obstruction of a lawful political process, diminished community support, reputational harm, and increased legal and administrative costs.

164.    Defendants' campaign caused actual damage to Plaintiff's economic interests and undermined Plaintiff's legitimate pursuit of incorporation and property development.

24

165.    Plaintiff seeks compensatory and consequential damages, along with any additional relief deemed just and proper by the Court.

## SIXTH CLAIM FOR RELIEF

*(Deprivation of Due Process – Article I, Section 7, Utah Constitution – All Defendants)*

166.    Plaintiff incorporates by reference the preceding paragraphs.

167.    Article I, Section 7 of the Utah Constitution guarantees that "[n]o person shall be deprived of life, liberty or property, without due process of law." Plaintiff, as a Utah limited liability company and landowner, is a "person" entitled to constitutional protections under Utah Code § 48-3a-102.

168.    Plaintiff possesses a constitutionally protected property interest in its 266 acres of land and a liberty interest in participating in the Incorporation process lawfully authorized under Utah Code § 10-2a-201 et seq.

169.    That process, having been formally certified and placed on the ballot by the Lieutenant Governor's Office, is a matter of direct democratic determination and must proceed free from unlawful interference.

170.    The deprivation of due process alleged herein arises from a coordinated effort by a municipal government, Kamas, as well as private individuals McCormick, Bristol, Sternlight, and Savage, who acted through the KVPA, to manipulate and co-opt local government actors and processes.

171.    Through concealed authorship of official resolutions, backchannel communications, and the calculated misuse of nonprofit pretenses, Defendants schemed and coordinated to ensure that the City of Kamas, by publicly and brazenly passing a resolution opposing the Incorporation and endorsing the KVPA, overrode the democratic process.

LEX TECNICA LTD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

172.    By officially taking this political position, the City of Kamas took state action within the meaning of Article I, Section 7.

173.    Government officials, including those from Kamas City, adopted and disseminated formal opposition to the Incorporation, using public platforms, resources, and authority, based on materials, messaging, and strategy engineered and delivered by KVPA.

174.    The involvement of government actors, acting under the color of law but covertly in coordination with the KVPA and its associates, constitutes state action within the meaning of Article I, Section 7.

175.    The City of Kamas effectively deputized the KVPA to do its illegal and unlawful election interference, raise funds, and sue the sponsors of the Incorporation.

176.    Through this unlawful coordination, Plaintiff was denied a fair and impartial opportunity to pursue incorporation, free from unlawful governmental opposition.

177.    Plaintiff's land-use rights have been impaired, and the lawful democratic process established by statute has been undermined by Defendants' interference.

178.    Because the harm to Plaintiff's constitutional rights and the integrity of the Incorporation process cannot be fully remedied through monetary damages alone, Plaintiff seeks declaratory relief, including an order that the conduct of the Defendants, including their manipulation of official channels and abuse of governmental authority, violated Plaintiff's due process rights under the Utah Constitution.

179.    Plaintiff also seeks a prompt injunction prohibiting the City of Kamas, the KVPA, its leaders, and any agents or affiliates from further interfering in the Incorporation process.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

LEX TECNICA LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

26

1.   Issue an emergency, preliminary injunction against Defendants requiring withdrawal of the resolution, and enjoining them from continuing their activities to illegal influence public officials or otherwise interfere with the lawful vote to incorporate West Hills, Utah;

2.   Issue judgment in favor of Plaintiff on all causes of action;

3.   Award actual and consequential damages;

4.   Award treble and punitive damages as permitted;

5.   Award costs and attorneys' fees as permitted by law;

6.   Grant such other and further relief as this Court deems just and proper to deter similar future abuse of Utah law.

DATED this 28th day of August, 2025.

LEX TECNICA LTD

*/s/  Michael D. Falater*
MICHAEL D. FALATER, ESQ.
Utah Bar No. 19620
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
*Attorneys for Plaintiff*