IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE PRESERVE, a Utah Landowner's Association,<br><br>               Plaintiff,<br>v.<br><br>KAMAS CITY, a Utah municipal corporation, et al.,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:25-cv-00735-TS-DBP<br><br>District Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter comes before the Court on Plaintiff The Preserve's Motion for Temporary Restraining Order and Order to Show Cause[1] and Defendants' Motion to Dismiss.[2] For the reasons discussed below, the Court will grant Defendants' Motion to Dismiss in part and decline to exercise supplemental jurisdiction over the remaining state law claims, rendering Plaintiff's Motion moot.

## I. BACKGROUND[3]

Plaintiff sues Defendants Kamas City, Kamas Valley Preservation Association ("KVPA"), Matt McCormick, Jeramy Bristol, Lindy Sternlight, Craig Savage, and DOES I-X for claims related to a ballot initiative regarding the incorporation of West Hills, Utah. Plaintiff owns

---

[1] Docket No. 2.

[2] Docket No. 21.

[3] The following information is summarized from the Amended Complaint and taken as true for purposes of the instant Motions.

approximately 266 acres of land in Summit County, Utah, which it seeks to develop through incorporation into the proposed town of West Hills.[4] The incorporation of West Hills was set to be voted on as a ballot initiative proposition in the November 4, 2025 election.[5] However, after this case was filed and prior to the election, a Utah state court set aside and invalidated the Lieutenant Governor's certification of the West Hills ballot initiative.[6] The election on the West Hills incorporation therefore did not go forward on November 4, 2025.[7]

The KVPA is a nonprofit that Plaintiff contends was "created for the express purpose of opposing and initiating litigation against the [i]ncorporation [of West Hills.]"[8] Ms. Sternlight is the leader of the KVPA.[9] Mr. Savage and Mr. Bristol are founders and/or supporters of the KVPA.[10] Mayor McCormick is the Mayor of the City of Kamas which is located in Summit County, Utah, near the proposed City of West Hills.[11]

Plaintiff asserts that since at least June 2024, Defendants worked unlawfully in concert against the incorporation of West Hills. Plaintiff alleges that in early April 2025, Ms. Sternlight emailed Mayor McCormick with a draft resolution opposing the incorporation and a request that the KVPA be linked to the official Kamas City website.[12] Then, at the April 22, 2025 Kamas

---

[4] Docket No. 9, at 2–3.

[5] *Id.* ¶ 15

[6] Docket No. 37-1, at 9–10; *McCaffrey v. Henderson*, Third District Court, Silver Summit Department, The Honorable Matthew Bates, No. 250500258, Docket No. 109, (Oct. 14, 2025), *cert. denied*, No. 20251257-SC (Oct. 28, 2025).

[7] Docket No. 37, at 2.

[8] Docket No. 9 ¶ 33.

[9] *Id.* ¶ 2.

[10] *Id.* ¶¶ 3, 4.

[11] *Id.* ¶¶ 5, 34.

[12] *Id.* ¶ 34.

City Council meeting, Mayor McCormick presented the resolution and the Council ultimately passed it, opposing incorporation and endorsing the KVPA's efforts.[13] Thereafter, the cities of Kamas, Oakley, and Francis, Utah, and South Summit School District sent a joint letter to the Utah Lieutenant Governor expressing their opposition to the incorporation of West Hills.[14]

The Amended Complaint asserts that Defendants' actions and communications demonstrate a "systemic conspiracy to recruit, obtain funding from, and solicit multiple government entities to take unlawful positions against [i]ncorporation."[15] Plaintiff asserts the following claims against Defendants: (1) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c); (2) Conspiracy to Violate RICO under 18 U.S.C. § 1962(d); (3) Civil conspiracy; (4) Violation of the Utah Pattern of Unlawful Activity Act under Utah Code Ann. § 76-10-16; (5) Tortious Inference with Prospective Economic Relations; and (6) Deprivation of Due Process under Art. I, Section 7 of the Utah Constitution.[16]

Plaintiff filed a Motion for Ex Parte Temporary Restraining Order at the same time it filed this action.[17] The Court previously denied the Motion as to the ex parte relief.[18] Defendants KVPA, Bristol, Savage, and Sternlight ("KVPA Defendants") filed the present Motion to Dismiss under Utah's Uniform Public Protection Act and Federal Rule of Civil Procedure 12(b)(6).

---

[13] *Id.* ¶¶ 38, 40.

[14] *Id.* ¶ 52.

[15] *Id.* ¶ 51.

[16] Docket No. 1. Plaintiff has since filed an Amended Complaint (Docket No. 9) which is the operative complaint.

[17] Docket No. 2.

[18] Docket No. 5.

## II. ANALYSIS

KVPA Defendants move to dismiss under Utah's Uniform Public Expression Protection Act ("UPEPA")[19] and under Federal Rule of Civil Procedure 12(b)(6). The parties dispute whether the UPEPA applies to the claims here. The Court need not determine whether UPEPA applies because as discussed below, the federal claims fail under Federal Rule of Civil Procedure 12(b)(6), and the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[20] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[21] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[22] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23]

---

[19] Utah Code Ann. § 78B-25-101 *et seq.*

[20] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

1. Federal RICO claims

"RICO provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct."[24] RICO can encompass many "traditional common law fraud claims if the requisite pattern and entity requirements are met. The Mafia, of course, is the quintessential racketeering enterprise, but normal businesses can also fall under RICO's broad criminal and civil rubric."[25] Under RICO:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.[26]

Plaintiff asserts two RICO claims: (1) Violation of RICO pursuant to 18 U.S.C. § 1962(c) against the KVPA Defendants and Mayor McCormick; and (2) Conspiracy to Violate RICO pursuant to 18 U.S.C. § 1962(d) against KVPA Defendants.

"To state a civil RICO claim, a plaintiff must adequately plead that (1) the defendant violated the RICO statute and (2) the plaintiff was injured 'by reason of' that violation."[27] The elements of a civil RICO claim are that defendants "(1) conduct[ed the affairs] (2) of an enterprise (3) through a pattern (4) of racketeering activity."[28] "Racketeering activity is defined .

---

[24] *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014) (internal quotation marks and citation omitted).

[25] *Id.*

[26] 18 U.S.C. § 1962(c).

[27] *Gaddy v. Corp. of the President of the Church of Jesus Christ*, 148 F.4th 1202, 1210 (D. Utah 2025) (citing 18 U.S.C. §§ 1962, 1964(c)).

[28] *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016).

. . as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering."[29]

A pattern of racketeering must include at least two predicate acts.[30] Plaintiff asserts that Defendants committed predicate acts of wire fraud and honest services fraud.[31] The Amended Complaint pleads the following acts of wire fraud:

- (1) On or about April 6, 2025, Sternlight, acting in her capacity as a leader of KVPA, emailed Mayor McCormick, attaching a draft city resolution opposing the [i]ncorporation of West Hills. The email presented the resolution as a legitimate governmental measure reflecting local consensus. However, it was drafted by KVPA, an unregistered private advocacy group with undisclosed economic and political interest; and then presented as the voice of Kamas.[32]

- (2) On or about April 17, 2025, Sternlight again emailed Mayor McCormick to request formal presentation of the finalized Resolution at the upcoming City Council meeting. Here, she reaffirmed the KVPA's intent to have the Resolution adopted without public acknowledgement of its true origin. The message was designed to give a false impression that the resolution emerged from public or neutral governmental deliberation, rather than from a small, partisan group with self-interested motivations.[33]

---

[29] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. 1961(c)(1)(B)).

[30] *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (citing 18 U.S.C. § 1961(5)).

[31] Docket No. 9 ¶¶ 57, 58.

[32] *Id.* ¶¶ 65–66.

[33] *Id.* ¶¶ 68–70.

- (3) On or about April 22, 2025, less than an hour before the Kamas City Council meeting, Mayor McCormick emailed the final version of the anti-[i]ncorporation resolution to Sternlight. The communications between Sternlight and Mayor McCormick concealed the private political origins of the measure, which was about to be voted on in a public session as if it originated from the City Council. The concealment of authorship and underlying political motives constitute deception, transmitted via email to mislead both the public and city council members.[34]

- (4) On or about April 24, 2025, the KVPA and its affiliated individuals engaged in coordinated outreach to media outlets. They sent anti-[i]ncorporation messaging that falsely implied institutional and grassroots support for the opposition effort. These messages omitted the fact that opposition was being coordinated and directed by a small group of private landowners and their affiliates, operating through the KVPA.[35]

The Amended Complaint pleads that the following acts constitute both wire fraud and honest services fraud:

- (5) Between May 1 and May 23, 2025, Bristol, acting as a founder and agent of the KVPA, sent a series of emails to Oakley officials, attaching draft resolutions and organizational materials. These messages clearly invited Oakley officials to

---

[34] *Id.* ¶¶ 72–74.
[35] *Id.* ¶¶ 75–77.

7

adopt the KVPA-drafted language opposing [i]ncorporation, without disclosing the KVPA's private motives, authorship, or funding sources.[36]

- (6) Throughout April and May 2025, KVPA leadership, including Bristol and Sternlight, sent multiple emails to municipal officials in Kamas, Oakley, and Francis attaching KVPA's articles of organization and requesting government adoption of language drafted by the KVPA. These communications made no disclosure of the KVPA's lack of IRS recognition, its private funding sources, or the self-interested motives of its leaders. By presenting themselves as a neutral community preservation group rather than a partisan entity opposing development, Defendants intentionally misled public officials into considering governmental action based on fraudulent representations.[37]

To establish wire fraud under 18 U.S.C. § 1343, Plaintiff must allege (1) "the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises," and (2) "use interstate wire, radio or television communications in furtherance of the scheme to defraud."[38]

"Notwithstanding the unique aspects of . . . wire fraud, the underlying requirements . . . are no different than for common law fraud."[39]

> Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the

---

[36] *Id.* ¶¶ 80–81.

[37] *Id.* ¶¶ 84–86.

[38] *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (citation omitted).

[39] *Wade v. Gaither*, 623 F. Supp. 2d 1277, 1283 (D. Utah 2009) (citing *Tal*, 453 F.3d at 1263); *BancOklahoma Mortg. Corp.*, 193 F.3d at 1103 ("Clearly the common thread among [mail fraud, wire fraud, and financial institution fraud] is the concept of 'fraud.'").

representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury. Failure to adequately allege any one of the nine elements is fatal to the fraud claim.[40]

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"[41] and as such, Rule 9 requires particularity in pleading RICO predicate acts.[42]

Here, the first three allegations of wire fraud concern emails between two Defendants, Sternlight and McCormick. The allegations fail to allege any reliance by the hearer that caused injury, and further the "hearer" in all three allegations is another Defendant that is allegedly part of the scheme. The fourth allegation pleads that Defendants communicated their message via email to media outlets, which again fails to allege reliance by the hearer or injury. The fifth allegation concerns emails sent to municipal officials in Oakley and again fails to show that the official relied on it or was otherwise injured. Finally, the sixth allegation concerns an unspecified number of emails between April and May 2025 sent to Oakley, Kamas, and Francis municipal officials that not only fails for lack of particularity but also fails to plead reliance or injury.

While Plaintiff pleads it has been injured by Defendants' statements and actions, it fails to allege that such injury was caused by reliance on any of the allegedly false statements as outlined above. Moreover, Plaintiff fails to allege that the object of the alleged scheme was to

---

[40] *Tal*, 453 F.3d at 1263 (quoting *BancOklahoma Mortg. Corp*, 193 F.3d at 1103).

[41] Fed. R. Civ. P. 9(b).

[42] *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) ("Every circuit which has examined this issue has found that Rule 9(b) is applicable to RICO predicate acts based on fraud").

obtain Plaintiff's property.[43] Accordingly, the Court concludes that the Amended Complaint fails to allege wire fraud as a predicate act.

The Court also concludes that the Amended Complaint fails to sufficiently allege honest services fraud under 18 U.S.C. §§ 1343, 1346. Under 18 U.S.C. § 1346, " the term "scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." "[H]onest-services fraud does not encompass conduct more wide ranging than the paradigmatic cases of bribes and kickbacks."[44]

Plaintiff alleges that KVPA Defendants engaged in honest services fraud "by devising and executing a scheme to deprive the public of its intangible right to honest government services."[45] "This included covertly directing and influencing public officials to deputize a nonprofit organization to mask political objectives and illegally influence the outcome of a certified ballot initiative in violation of statutory and constitutional law, and effectively empower the KVPA to be the shadow arm of Kamas to illegally stop any use of the land; similar to an unlawful taking."[46] The Amended Complaint alleges two incidents of honest services fraud as stated in allegations (5) and (6) above. Neither allegation supports that Defendants "solicited or accepted side payments from a third party in exchange for making . . . misrepresentations"[47] or

---

[43] *Kousisis v. United States*, 605 U.S. 114, 124 (2025) (holding that "a defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property'") (quoting 18 U.S.C. § 1343).

[44] *Skilling v. United States*, 561 U.S. 358, 411 (2010); *Dietz v. Cypress Semiconductor Corp.*, 711 F. App'x 478, 483 n.3 (10th Cir. 2017).

[45] Docket No. 9 ¶ 58.

[46] *Id.* ¶ 59.

[47] *Skilling*, 561 U.S. at 413; *see Bribery*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "bribery" as "[t]he corrupt payment, receipt or solicitation of a private favor for official action").

received kickbacks in exchange for the alleged misrepresentations.[48] Plaintiff does not address these deficiencies in its Response. The allegations also suffer from the same issues as the wire fraud allegations: failure to allege reliance or injury and failure to plead with sufficient particularity under Rule 9.

The Court therefore concludes that the Plaintiff fails to state a RICO claim under both 18 U.S.C. §§ 1962(c) and 1962(d) as the Amended Complaint fails to sufficiently plead that Defendants engaged in a pattern of predicate acts. The Court will accordingly grant the Motion as to these claims.

2.   State law claims

Federal courts may exercise supplemental jurisdiction over state law claims which arise out of the same case or controversy as claims for which the court has original jurisdiction.[49] However, when all claims over which the court had original jurisdiction have been dismissed, the district court can decline to exercise supplemental jurisdiction.[50] "When all federal claims have been dismissed, the court . . . usually should[] decline to exercise jurisdiction over any remaining state law claims."[51] Having resolved the federal claims and because the case is otherwise in its infancy, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will dismiss the claims without prejudice.

---

[48] *See Kickback*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "kickback" as "[a] sum of money illegally paid to someone in authority . . .  esp., a return of a portion of a monetary sum received, usu. as a result of coercion or a secret agreement").

[49] 28 U.S.C. § 1367(a).

[50] *Id.* § 1367(c)(3).

[51] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)).

11

## III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Temporary Restraining Order (Docket No. 2) is DENIED AS MOOT; it is further

ORDERED that Defendants' Motion to Dismiss (Docket No. 21) is GRANTED in part; it is further

ORDERED that the remaining state law claims are DISMISSED WITHOUT PREJUDICE.

DATED May 6, 2026.

BY THE COURT:

_____

TED STEWART
United States District Judge